Michael Zachary (SBN 112479)
mzachary@bdiplaw.com
Hillary Bunsow (SBN 278719)
Hillary.bunsow@bdiplaw.com
Brenda Entzminger (SBN 226760)
bentzminger@bdiplaw.com
Gareth De Walt (SBN 261479)
gdewalt@bdiplaw.com
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744

Michael Matesky (*Pro Hac Vice*)
mike@mateskylaw.com
Matesky Law PLLC
4500 9th Ave. NE, Suite 300
Seattle, WA 98105
Ph: 206.701.0331
Fax: 206.701.0332

*Attorneys for Plaintiff*
CALIFORNIA INDUSTRIAL
FACILITIES RESOURCES, INC.,
dba CAMSS SHELTERS

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA INDUSTRIAL FACILITIES RESOURCES, INC., dba CAMSS Shelters, an Alaska corporation,<br><br>       Plaintiff,<br><br>   vs.<br><br>CELINA TENT INC., an Ohio corporation,<br><br>       Defendant. | Case No.  3:24-cv-372-KAW<br><br>**FIRST AMENDED COMPLAINT FOR LANHAM ACT TRADEMARK INFRINGEMENT, LANHAM ACT FALSE DESIGNATION OF ORIGIN, COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT, AND VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**<br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff California Industrial Facilities Resources, Inc., dba CAMSS Shelters, by its undersigned attorneys, brings this action against Celina Tent Inc.:

**Parties, Jurisdiction, and Venue**

1.      Plaintiff California Industrial Facilities Resources, Inc., dba CAMSS Shelters ("CAMSS" or "Plaintiff"), is an Alaska corporation with its headquarters located in Monroe, Washington.

2.      Defendant Celina Tent Inc. ("Celina" or "Defendant") is an Ohio corporation with its headquarters located in Celina, Ohio.

3.      The claims set forth herein are interrelated, inextricably intertwined, and arise from a common nucleus of operative fact.

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

5.      Venue is proper in this Court under 28 U.S.C. § 1391.

6.      This Court has personal jurisdiction over Celina for all claims asserted herein.

**Factual Background**

**CAMSS Shelters and Military Sales**

7.      Plaintiff CAMSS was incorporated in 1991.  Its predecessor in interest was incorporated in 1986.

8.      For over 38 years, CAMSS has designed, manufactured, and sold rapid deployment and semi-permanent shelters and related goods and accessories used all over the globe by military service branches, non-governmental organizations, private businesses, and government agencies.

9.      During that time, CAMSS has successfully performed numerous extremely challenging projects for the U.S. military, and has earned recognition and a significant positive reputation while doing so.  CAMSS sells a significant percentage of its shelters and related products to U.S. military purchasers.

10.     CAMSS was one of the first shelter companies to provide integrated shelter systems, i.e., shelters that include lighting, outlets, electrical panels, flooring, frame, cover system, container, and tools for set up.  Prior to provision of integrated shelters, different components of shelter systems would often be provided by different vendors, which commonly led to integration and compatibility problems.

11.     In 1999, CAMSS was awarded a 10 year contract for the US Air Force Medium Shelter program.

12.     The competition to secure the U.S. Air Force Medium Shelter contract included rigorous testing criteria, including for set up time and ability to deploy in extreme environmental conditions.  The CAMSS product passed all the tests and dramatically exceeded the goal criteria in set up time and compactness, as well as meeting many other tests such as wind load and chamber testing in extreme cold and heat with simulated Saudi solar load.

13.     Prior to CAMSS's design, testing, and production of a medium shelter system for the U.S. Air Force, this type of shelter did not exist.  The U.S. Air Force previously used a "GP" or "General Purpose Shelter." During the term of the 10 year contract, CAMSS received and fulfilled a large quantity of orders for the Air Force Medium Shelter product, which CAMSS identified as "California Medium Shelter System" and/or "CAMSS30" shelters.  CAMSS consistently received excellent reviews on Contractor Reporting Assessment Reports (CPARs) from the U.S. Government for these products.

14.     After the 10 year contract ended in 2009, the U.S. Air Force continued to order large quantities of the "California Medium Shelter System" or "CAMSS30" products, as well as other CAMSS shelters and related goods, through commercial off-the-shelf ("COTS") contracts with the General Services Administration (GSA) and Defense Logistics Agency (DLA), which included pre-negotiated pricing on products, making it easier for government customers to order, and the Tailored Logistics Support (TLS) program with DLA.

15.     As a result of CAMSS's long history of substantial sales of California Medium Shelter System products to U.S. military purchasers, many servicemen and women within the U.S. military are familiar with CAMSS's California Medium Shelter System products and related goods, their high quality, and their satisfaction of rigorous testing criteria.

16.     In addition to its California Medium Shelter System products, CAMSS has successfully designed and delivered numerous other products to, and completed numerous other projects for, the U.S. military under difficult conditions.

17.     CAMSS rebuilt the largest deployed military hospital in military history in Balad, Iraq, when it was busier than all the emergency rooms in the United States combined.  When the hospital was taken down, parts of the hospital designed and built by CAMSS were sent to the National Museum of Health & Medicine in Washington, D.C. for display.

18.     Through such extensive and successful provision of high-quality goods and services, CAMSS has developed a significant and positive reputation within the U.S. military.

19.     Although CAMSS shelters are common and well-known within the U.S. military, as a result of turnover of military users and procurement officers, many individuals procuring shelters and related goods and accessories for military branches do not have extensive experience with such procurement.  Accordingly, such users or procurement officers rely on the CAMSS, CAMSS Shelters, and California Medium Shelter System brand names to ensure that they are procuring products that meet the specifications required by their organization and integrate seamlessly with existing CAMSS shelters and products.

20.     There are many methods through which a U.S. military or other government purchaser may purchase shelter products that meet required criteria.  The purchasing process often begins with a user or procurement officer making direct contact with a vendor, such as CAMSS, to obtain information about products and specifications.

21.     CAMSS has continuously operated a website available at the "CAMSS.com" domain name since at least the early 2000s.

22.     Aside from publicly-advertised bids, the majority of Plaintiff's sales of shelters and related goods are initiated through the CAMSS.com web site, including through requests for information from a procurement officer who conducted an online search for "CAMSS," "CAMSS shelters," or "California Medium Shelter System."

**The CAMSS, CAMSS Shelters, and California Medium Shelter System Trademarks**

23.     Since at least as early as 2000, CAMSS has continually and substantially exclusively used the "California Medium Shelter System" trademark in commerce on and in connection with shelter products.

24.     Since about 2003, CAMSS has continually and substantially exclusively used the "CAMSS" and "CAMSS Shelters" trademarks in commerce on and in connection with its shelters and related goods and accessories.

25.     The term "CAMSS" is not in any English language dictionary.

26.     Through its long and substantial history of sales of shelters under the California Medium Shelter System, CAMSS, and CAMSS Shelters trademarks, CAMSS has developed significant goodwill and customer recognition in the California Medium Shelter System, CAMSS, and CAMSS Shelters trademarks, including among U.S. military purchasers.

27.     CAMSS is the owner of U.S. Trademark Registration No. 4,104,114 on the Principal Register for the trademark "CAMSS" in standard characters used in connection with the following goods:

"Air conditioning units; portable electric heaters; reverse osmosis water purification units; water purifiers; electric lighting fixtures; heating, ventilating and air conditioning (HVAC) units" in International Class 11;

"Prefabricated non-metal buildings and fabric shelters for use as tactical operations centers, command posts, army shelters, military shelters, schools, shade shelters, greenhouses, billeting, dorms, offices, field kitchens, airport centers, field hospitals, medical facilities, shade shelters for shielding environmental control

units, housing for civilian and military personnel, industrial manufacturing facilities; prefabricated wood and synthetic flooring" in International Class 19; and

"Soft shelters, namely, tents" in International Class 22.

28.     U.S. Trademark Registration No. 4,104,114 was issued on February 28, 2012, from an application filed on November 30, 2010.  On September 18, 2018, the U.S. Patent & Trademark Office accepted and acknowledged a declaration of use that meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. § 1058, and a declaration of incontestability that meets the requirements of Section 15 of the Trademark Act, 15 U.S.C. § 1065, for U.S. Trademark Registration No. 4,104,114.  On August 13, 2022, the U.S. Patent & Trademark Office accepted and acknowledged a declaration of use that meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. § 1058, and a renewal application that meets the requirements of Section 9 of the Trademark Act, 15 U.S.C. § 1059, for U.S. Trademark Registration No. 4,104,114.  U.S. Trademark Registration No. 4,104,114 is currently valid and subsisting.  A copy of the registration certificate for U.S. Trademark Registration No. 4,104,114 is attached hereto as Exhibit A.

29.     CAMSS is the owner of U.S. Trademark Registration No. 4,166,935 on the Principal Register for the trademark "CAMSS Shelters" in standard characters used in connection with "All weather, non-metal mobile temporary shelter structures" in International Class 19.

30.     U.S. Trademark Registration No. 4,166,935 was issued on July 3, 2012, from an application filed on August 29, 2011.  On July 13, 2018, the U.S. Patent & Trademark Office accepted and acknowledged a declaration of use that meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. § 1058 and a declaration of incontestability that meets the requirements of Section 15 of the Trademark Act, 15 U.S.C. § 1065, for U.S. Trademark Registration No. 4,166,935.  On December 17, 2022, the U.S. Patent & Trademark Office accepted and acknowledged a declaration of use that meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. § 1058, and a renewal application that meets the requirements of Section 9 of the Trademark Act, 15 U.S.C. §1059, for U.S. Trademark Registration No. 4,166,935.  U.S.

Trademark Registration No. 4,166,935 is currently valid and subsisting.  A copy of the registration certificate for U.S. Trademark Registration No. 4,166,935 is attached hereto as Exhibit B.

**Celina's Google Ad Campaign to Deceive CAMSS Customers**

31.     Defendant Celina sells and/or markets shelters to the same military and governmental purchasers in competition with CAMSS.

32.     Celina operates a website available at www.CelinaMilitaryShelters.com, through which Celina advertises shelters and related goods for military purchasers, in direct competition with CAMSS.

33.     In approximately May of 2023, Defendant Celina hired a former CAMSS employee named Morgan Brooke in a "Product Solutions" role.

34.     Mr. Brooke had previously been employed by CAMSS for approximately 20 years. During the majority of the time Mr. Brooke was employed by CAMSS, he was a program manager for the Medium Shelter System program advertised and sold by CAMSS under the California Medium Shelter System trademark.

35.     As program manager for CAMSS's Medium Shelter System, Mr. Brooke was intimately familiar with the CAMSS, CAMSS Shelters, and California Medium Shelter System trademarks, as well as with the methods through which CAMSS marketed and sold its shelters and related products to military and government purchasers, and the methods through which such military purchasers sought out information regarding CAMSS shelter products for purchase.  Mr. Brooke was aware that military purchasers associated the trademark California Medium Shelter System with CAMSS's medium shelter products.

36.     Beginning in approximately January of 2024, Mr. Brooke has worked for Celina as "Business Development Director, CONUS."  "CONUS" is a term used to refer to the continental United States.

37.     Beginning at a date unknown and continuing until at least the date of the filing of this action, Defendant Celina has paid to display sponsored search results and advertisements

through online search engine advertising, which search results prominently use the California Medium Shelter System trademark, and the registered CAMSS and CAMSS Shelters trademarks, including as hyperlinked headlines within the search results. However, when users click on the hyperlink containing CAMSS's trademarks in these advertisements, they are <u>not</u> directed to the CAMSS website, or to any site selling genuine CAMSS products. Rather, users who click on Celina's sponsored search ads are directed to the CelinaMilitaryShelters.com website, where Celina advertises shelters in direct competition with CAMSS.

38.    Beginning at a date unknown and continuing until at least the date of the filing of this action, Defendant Celina has paid to display sponsored search results and advertisements through the Google Ads (formerly AdWords) service, which search results prominently use the California Medium Shelter System trademark, and the registered CAMSS and CAMSS Shelters trademarks, including as hyperlinked headlines within the search results. However, when users click on the hyperlink containing CAMSS's trademarks in these advertisements, they are <u>not</u> directed to the CAMSS website, or to any site selling genuine CAMSS products. Rather, users who click on Celina's Google Ads are directed to the CelinaMilitaryShelters.com website, where Celina advertises shelters in direct competition with CAMSS.

39.    The Google Ads service allows advertisers such as Celina to choose the search keywords, namely, the search terms entered by Google search engine users, that will cause the advertiser's advertisement to be displayed to those users. Google advertises that "[k]eywords match your ads with the terms people are searching for." Depending on the amount paid by the advertiser to Google, the advertisement, which may be in the form of a displayed search result, may appear as the first result displayed to the user.

40.    Celina has intentionally targeted Internet users searching for CAMSS products by selecting, *inter alia*, at least the following terms as targeted search keywords:

"CAMSS"

"CAMSS Shelter"

"CAMSS Shelters"

"CAMSS Medium Shelter"

"California Medium Shelter System"

"California CAMSS Shelter"

41.     Celina has also targeted California and customers within California by selecting, *inter alia*, at least the following terms as targeted search keywords:

"California Medium Shelter System"

"California CAMSS Shelter"

42.     The Google Ads service allows advertisers to choose the content of the headline, description, display URL, and any image component of the advertisements shown to Google search engine users.

43.     Celina has intentionally deceived customers seeking out CAMSS products by creating Google Ads that prominently use the California Medium Shelter System, CAMSS, and CAMSS Shelters trademarks in the headline and the description of Celina's Google Ads, but direct users to Celina's website where Celina advertises its competing products.

44.     For example, a Google search for "CAMSS Medium Shelter" on January 19, 2024, displayed the following advertisement:

45. The Google Ad displayed in paragraph 44 above directed users to the www.CelinaMilitaryShelters.com website, which does not advertise genuine CAMSS products, but instead advertises Celina's directly competitive products.

46. As another example, a Google search for "CAMSS medium shelter" on January 19, 2024, Google displayed the following advertisement:

Sponsored

 celinamilitaryshelters.com
https://www.celinamilitaryshelters.com ⋮

**Camss shelter - Celina**

**Medium Shelter** System - Celina — Frame pieces fit together neatly, letting it pack into smaller shipping containers. Every arch...

Small Shelter - Celina · Medium Shelter - Celina · Lams Shelter - Celina · Contact US · ECUs

47. The Google Ad displayed in paragraph 46 above directed users to the www.CelinaMilitaryShelters.com website, which does not advertise genuine CAMSS products, but instead advertises Celina's directly competitive products.

48. Other examples of Celina's Google Ads that use the California Medium Shelter System, CAMSS, and/or CAMSS Shelters trademarks, but direct users to Celina's directly competitive website, are shown below:

**Sponsored**

 celinamilitaryshelters.com
https://www.celinamilitaryshelters.com ⋮

### JOCOTAS Shelter

**Camss shelter** - **Shelters** — Frame pieces fit together neatly, letting it pack into smaller shipping containers. Every arch is designed to provide stability and support for the **shelter**. GSA - GS-07F-5874P.

#### Contact US
For inquiries about ordering Located in Celina, Ohio

#### Small Shelter - Celina
Small modular system shelter Small Shelter System- Celina

#### Medium Shelter - Celina
Medium modular system shelter Medium Shelter System - Celina

#### Lams Shelter - Celina
Large Area Maintenance Shelters Large Military Shelter

**Sponsored**

 celinamilitaryshelters.com
https://www.celinamilitaryshelters.com ⋮

### Camss shelter - Shelters — Medium Kitchen Shelter

Frame pieces fit together neatly, letting it pack into smaller shipping containers. Every arch is designed to provide stability and support for the **shelter**. GSA -...

#### Small Shelter - Celina
Small modular system shelter Small Shelter System- Celina

#### Medium Shelter - Celina
Medium modular system shelter Medium Shelter System - Celina

#### Lams Shelter - Celina
Large Area Maintenance Shelters Large Military Shelter

**Sponsored**

 celinamilitaryshelters.com
https://www.celinamilitaryshelters.com   ⋮

### Military Shelter For Sale | California medium shelter system

CELINA is a fabric **shelter** and product manufacturer located in rural Ohio. We've Harnessed All Of Our Experience In The Fabric **Shelter** Field. GSA - GS-07F-5874P. GSA & Government Sales. US Manufacturer.

Pillow Bladders · Small Shelter - Celina · Medium Shelter - Celina · Vestibules · Concealment

☏ Call us

49.     Celina's use of the California Medium Shelter System, CAMSS, and CAMSS Shelters trademarks in its Google Ads is likely to confuse Internet users as to source, sponsorship, or affiliation between CAMSS and Celina, or between CAMSS and the shelter products sold by Celina.

50.     At a minimum, Google search users seeking out information regarding genuine CAMSS products are likely to mistakenly believe that, if they click on Celina's Google Ads that display the California Medium Shelter System, CAMSS, and CAMSS Shelters trademarks, they will be directed to a site that is operated by CAMSS or sells genuine CAMSS products.

51.     A Google user searching for CAMSS products who clicks on one of Celina's Google Ads is <u>not</u> likely to realize that Celina is unaffiliated with CAMSS upon reaching the CelinaMilitaryShelters.com website.  This is because the products sold by Celina are, at least initially, facially identical or similar to genuine CAMSS products sold by CAMSS.

52.     Celina uses images of shelters in its Google Ads and on the CelinaMilitaryShelters.com website that appear, at least initially, to be identical or nearly identical or facially similar to genuine CAMSS shelters.

53.     Below is a photograph of the genuine "CAMSS30" U.S. Air Force Medium Shelter (on the left) sold by CAMSS, side-by-side with a photo of a "Dynamic Medium Shelter" displayed on the CelinaMilitaryShelters.com website (on the right):




54.     Below is a photograph of the genuine CAMSS 20Q Small Shelter System (on the left) sold by CAMSS, side-by-side with a photo of a "Dynamic Small Shelter" displayed on the CelinaMilitaryShelters.com website (on the right):




55.     The CelinaMilitaryShelters.com website advertises multiple shelter products that are nearly identical or facially similar in initial appearance and specifications to shelter products offered by CAMSS.

56.     In light of the facial similarity between genuine CAMSS products and the competing products advertised by Celina on its CelinaMilitaryShelters.com website, a Google user who clicks on a Celina Google Ad prominently featuring the California Medium Shelter System, CAMSS, or CAMSS Shelters trademark is likely to mistakenly believe that he or she can order genuine CAMSS products from Celina.

57.     Additionally, Celina has contracted with other companies, such as Utilis USA, to manufacture shelters and related goods in association with such companies.  Accordingly, a Google user seeing the California Medium Shelter System, CAMSS, and CAMSS Shelters trademarks displayed side-by-side with the Celina name is likely to mistakenly believe that there is some association between the two entities, e.g., that CAMSS has contracted with Celina to manufacture genuine CAMSS products, or that CAMSS has endorsed or authorized Celina's products.

58.     However, the shelter products offered by Celina do not offer all the same benefits of the CAMSS products that they mimic.

59.     For example, each component of the CAMSS30 Medium Shelter System is identified with a National Stock Number, which enables military procurement officers to ensure that they can obtain replacement parts that integrate seamlessly with existing shelter systems.  By contrast, the "Dynamic Medium Shelter" offered by Celina does not have National Stock Numbers.

60.     Similarly, the CAMSS 20Q Small Shelter System is identified with a National Stock Number.  By contrast, the "Dynamic Small Shelter" offered by Celina does not have any National Stock Numbers.

61.     Celina's deceptive use of the California Medium Shelter System, CAMSS, and CAMSS Shelters trademarks to deceive purchasers seeking out genuine CAMSS products violates U.S. Government policy and regulations, which require government contractors to be "responsible" and "[h]ave a satisfactory record of integrity and business ethics."  FAR 9.104-1(d).

62.     In order to participate in the Google Ads service, Celina was required to agree to Google's Terms of Service.

63.     Google's Terms of Service state the following:

"Google services are provided by, and you're contracting with:

Google LLC
organized under the laws of the State of Delaware, USA, and operating under the laws of the USA

1600 Amphitheatre Parkway
Mountain View, California 94043
USA"

64.     Google's Terms of Service also state the following: "California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts."

65.     Google LLC is headquartered in Mountain View, California, within the Northern District of California.

66.     Celina knowingly and intentionally entered into an agreement and contract with Google LLC within the Northern District of California, so that it could participate in the Google Ads service and display Google Ads prominently featuring the California Medium Shelter System, CAMSS, and CAMSS Shelters trademarks.  As part of its ongoing contractual relationship with Google, Celina knowingly and intentionally selected options offered by Google in which an advertiser who pays for keyword search results can have the keywords displayed as headlines, within URLs and otherwise within the search results.  Celina knowingly and intentionally selected and paid for options offered by Google in which the amount of the payment for keyword searches results in the ad (the sponsored search result) being displayed first, ahead of other search results.

67.     Celina knew at the time it entered into and acted under and pursuant to its agreement with Google and selected options for the display of keywords, such as "California Medium Shelter System" and "CAMSS Shelters," that the selections would cause those keywords to be included in the results displayed to users, including to users in California.

68.     Celina knowingly and intentionally agreed that any dispute relating to Celina's use of the Google Ads service would be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and consented to personal jurisdiction in such courts.

**First Cause of Action**

**Lanham Act Trademark Infringement – 15 U.S.C. § 1114(1)**

69.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 68, inclusive, with the same force and effect as if set forth fully herein.

70.     This cause of action arises under the Lanham Act, 15 U.S.C. § 1114(1).

71.     Plaintiff CAMSS is the owner of U.S. Registration No. 4,104,114 for the CAMSS trademark in standard characters, which registration is valid and subsisting.

72.     Plaintiff CAMSS is the owner of U.S. Registration No. 4,166,935 for the CAMSS Shelters trademark in standard characters, which registration is valid and subsisting.

73.     Plaintiff has never authorized Celina to use the registered CAMSS or CAMSS Shelters trademarks.

74.     Defendant Celina has, without the consent of CAMSS, used in commerce reproductions, counterfeits, copies, and colorable imitations of the registered CAMSS and CAMSS Shelters marks in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, or to cause initial interest confusion.

75.     Defendant Celina has, without the consent of CAMSS, reproduced, counterfeited, copied, or colorably imitated the registered CAMSS and CAMSS Shelters marks and applied such reproductions, counterfeits, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, or to cause initial interest confusion.

76.     Defendant's use of the registered CAMSS and CAMSS Shelters marks in connection with shelters and related goods, as described herein, constitutes use of counterfeits of

marks that are registered on the principal register in the United States Patent and Trademark Office for such goods sold, offered for sale, or distributed and that are in use.

77.      Defendant's acts of trademark infringement as described herein have caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law, unless enjoined by this Court.

78.      Defendant has engaged in the acts of trademark infringement described herein knowingly, intentionally, willfully, and maliciously.

79.      Defendant has engaged in the acts of trademark infringement described herein with the specific intent that such acts would damage CAMSS, and would deceive prospective customers located in California.

80.      Defendant's acts of trademark infringement described herein have, in fact, caused damage and injury to CAMSS, and, on information and belief, have deceived prospective customers located in California.

## Second Cause of Action

### Lanham Act False Designation of Origin – 15 U.S.C. § 1125(a)

81.      Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 80, inclusive, with the same force and effect as if set forth fully herein.

82.      This cause of action arises under the Lanham Act, 15 U.S.C. § 1125(a).

83.      Celina has, on or in connection with goods or services, used in commerce a word, term, name, symbol, or device, or combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive, or to cause initial interest confusion as to the affiliation, connection, or association of Celina with CAMSS, or as to the origin, sponsorship, or approval of Celina's goods, services, or commercial activities by CAMSS.

84.      Celina has, on or in connection with goods or services, used in commerce a word, term, name, symbol, or device, or combination thereof, or a false designation of origin, false or

misleading description of fact, or false or misleading representation of fact, in commercial advertising or promotion, which misrepresents the nature, characteristics, qualities, or geographic origin of Celina's or another person's goods, services, or commercial activities.

85.    Defendant's violations of the Lanham Act as described herein have caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law, unless enjoined by this Court.

86.    Defendant has engaged in the Lanham Act violations described herein knowingly, intentionally, willfully, and maliciously.

87.    Defendant has engaged in the Lanham Act violations described herein with the knowledge and intent that such acts would damage CAMSS, and would deceive prospective customers in California.

88.    Defendant's Lanham Act violations described herein have, in fact, caused damage and injury to CAMSS, and, on information and belief, have actually deceived prospective customers in California.

**Third Cause of Action**

**<u>Common Law Unfair Competition/Trademark Infringement</u>**

89.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 88, inclusive, with the same force and effect as if set forth fully herein.

90.    Defendant has engaged in a pattern of willful and intentional acts designed to appropriate Plaintiff's prestige and goodwill, including without limitation, by copying Plaintiff's registered marks and using in commerce reproductions, counterfeits, copies, and colorable imitations of the California Medium Shelter System, CAMSS, and CAMSS Shelters marks in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, or to cause initial interest confusion.

91.     Defendant has been and is passing off its products as those of Plaintiff, sponsored by Plaintiff, approved by Plaintiff, affiliated with Plaintiff, connected with Plaintiff and/or associated with Plaintiff, causing a likelihood of confusion or misunderstanding or initial interest confusion as to the source, sponsorship, or approval of Defendant's products, or as to Defendant's affiliation, connection, or association with Plaintiff, and otherwise damaging the public.

92.      Defendant's conduct is unlawful, unfair and deceptive in violation of California law, and is deliberate, willful and intended to confuse.

93.     As a direct and proximate cause of Defendant's wrongful conduct, Defendant has been and will continue to be unjustly enriched, and Plaintiff has sustained and will continue to sustain diversion of trade with lost profits and injury to its business reputation and goodwill.

94.     As a direct result of Defendant's unlawful conduct, Plaintiff has suffered substantial damages in an amount to be proven at trial, as well as the continuing loss of Plaintiff's goodwill and reputation.  This continuing loss of goodwill and reputation cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendant's conduct.

95.     Plaintiff is entitled to costs and reasonable attorneys' fees.

96.     Defendant has derived unlawful gains and profits from its acts of unfair competition.   Plaintiff is entitled to the disgorgement of any money or other property that Defendant acquired through the aforesaid unlawful acts.

97.     Defendant's unlawful actions have been malicious and oppressive with full knowledge of Plaintiff's rights, thus entitling Plaintiff to exemplary damages pursuant to California Civil Code § 3294(a).

98.     Defendant should be required to pay Plaintiff's attorneys' fees and litigation expenses under Cal. Civ. Code § 1021.5.  This action is likely to result in the enforcement of an important right affecting the public interest and confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement are such as

to make an award of attorney's fees appropriate, and the fees should not in the interest of justice be paid out of any other recovery.

**Fourth Cause of Action**

**Unlawful, Unfair, and Fraudulent Business Practices –**

**California Business & Professions Code § 17200 *et seq*.**

99.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 98, inclusive, with the same force and effect as if set forth fully herein.

100.     Defendant's unlawful acts have at all times been willful and/or knowing.

101.     Defendant's unlawful acts violate several federal and California statutes and regulations, as detailed herein.

102.     Defendant has engaged in a pattern of willful and intentional acts designed to appropriate Plaintiff's prestige and goodwill, including without limitation, by copying Plaintiff's registered marks and using in commerce reproductions, counterfeits, copies, and colorable imitations of the California Medium Shelter System, CAMSS, and CAMSS Shelters marks in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive or to cause initial interest confusion.

103.      Defendant has been and is passing off its products as those of Plaintiff, sponsored by Plaintiff, approved by Plaintiff, affiliated with Plaintiff, connected with Plaintiff and/or associated with Plaintiff, causing a likelihood of confusion or misunderstanding or initial interest confusion as to the source, sponsorship, or approval of Defendant's products, or as to Defendant's affiliation, connection, or association with Plaintiff, and otherwise damaging the public.

104.     Defendant's conduct is unlawful, unfair and deceptive in violation of California Business & Professions Code § 17200 *et seq*.

105.     Defendant's unlawful acts have deceived and/or are likely to deceive members of the public into believing that Defendant's products and Plaintiff's products, or the parties'

businesses, are related, and/or that Defendant's products are affiliated with, associated with, and/or sold by Plaintiff and/or that Plaintiff's products are affiliated with, associated with, and/or sold by Defendant, and/or that Defendant has customers that it does not have, and/or that Defendant's products do contain features that they do not in fact contain.

106.   As a direct and proximate cause of Defendant's wrongful conduct, Defendant has been and will continue to be unjustly enriched, and Plaintiff has sustained and will continue to sustain diversion of trade with lost profits and injury to its business reputation and goodwill.

107.   As a direct result of Defendant's unlawful conduct, Plaintiff has suffered substantial damages in an amount to be proven at trial, as well as the continuing loss of Plaintiff's goodwill and reputation.  This continuing loss of goodwill and reputation cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendant's conduct.

108.   Plaintiff is entitled to costs and reasonable attorneys' fees.

109.   Defendant has derived unlawful gains and profits from its acts of unfair competition.  Plaintiff is entitled to the disgorgement of any money or other property that Defendant acquired through the aforesaid unlawful acts.

110.   Defendant should be required to pay Plaintiff's attorneys' fees and litigation expenses under Cal. Civ. Code § 1021.5.  This action is likely to result in the enforcement of an important right affecting the public interest and confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement are such as to make an award of attorney's fees appropriate, and the fees should not in the interest of justice be paid out of any other recovery.

**Fifth Cause of Action**

**Deceptive, False, and Misleading Advertising Under California Business & Professions Code § 17500**

111.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 110, inclusive, with the same force and effect as if set forth fully herein.

112.   Defendant, intending to sell its products to the public, used false and/or misleading advertising, knowing the same to be untrue and misleading, in violation of California Business and Professions Code § 17500 *et seq.*

113.   Defendant's deceptive trade practices have caused, and are likely to cause, substantial injury to the public and to Plaintiff.

114.   Defendant is knowingly and intentionally misrepresenting, misleading and/or falsely designating to the general public the affiliation, connection, association, origin, source, sponsorship, endorsement and approval of Defendant's services and goods, and intends to misrepresent and falsely designate to the general public as to the affiliation, connection, association, origin, source, approval, endorsement or sponsorship of Defendant's services and goods, so as to create a likelihood of confusion, or to cause initial interest confusion by the public, as to the affiliation, connection, association, origin, source, approval, endorsement and sponsorship of Defendant's services and goods.

115.   Defendant's misleading advertisements describe, suggest, imply, and/or convey its affiliation with Plaintiff in a misleading fashion with the intention of diverting consumers away from Plaintiff's authorized sales channels and toward Defendant's web site.

116.   Defendant's unlawful acts have deceived and/or are likely to deceive members of the public into believing that Defendant's products and Plaintiff's products, or the parties' businesses, are related, and/or that Defendant's products are affiliated with, associated with, and/or sold by Plaintiff and/or that Plaintiff's products are affiliated with, associated with, and/or sold by

Defendant, and/or that Defendant has customers that it does not have, and/or that Defendant's products do contain features that they do not in fact contain.

117. As a result of Defendant's unlawful conduct, Plaintiff has suffered substantial damages in an amount to be proven at trial, as well as the continuing loss of Plaintiff's goodwill and reputation. This continuing loss of goodwill and reputation cannot be properly calculated and thus constitutes irreparable harm and an injury for which Plaintiff has no adequate remedy at law. Plaintiff will continue to suffer irreparable harm unless this Court enjoins Defendant's conduct.

118. Plaintiff is entitled to costs and reasonable attorneys' fees.

119. Defendant has derived unlawful gains and profits from its acts of unfair competition. Plaintiff is entitled to the disgorgement of any money or other property that Defendant acquired through the aforesaid unlawful acts.

120. Defendant should be required to pay Plaintiff's attorneys' fees and litigation expenses under Cal. Civ. Code § 1021.5. This action is likely to result in the enforcement of an important right affecting the public interest and confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement are such as to make an award of attorney's fees appropriate, and the fees should not in the interest of justice be paid out of any other recovery.

## **Prayer for Relief**

WHEREFORE, Plaintiff prays for a judgment and order as follows:

A. That Defendant is liable on each cause of action asserted, and for all relief and amounts awarded by the Court in favor of Plaintiff;

B. That Defendant acted knowingly, intentionally, willfully, wantonly, maliciously, and deliberately in committing the tortious and other unlawful acts as alleged herein;

C. That, in light of all the circumstances, this is an exceptional case under 15 U.S.C. § 1117(a);

D.     That Defendant and all other persons acting in concert or participation with Defendant be temporarily, preliminarily and permanently enjoined:

1.     From any and all use of the California Medium Shelter System, CAMSS, and CAMSS Shelters trademarks in the visible text of any Google Ads or other online search advertisements;

2.     From any and all use of the California Medium Shelter System, CAMSS, and CAMSS Shelters trademarks in any advertising or marketing materials, publications, or activities, except to the extent such use (a) explicitly refers to Plaintiff or Plaintiff's products, (b) Plaintiff or Plaintiff's products are not otherwise identifiable without such use, (c) only so much of the California Medium Shelter System, CAMSS, and CAMSS Shelters marks are used as is necessary to identify CAMSS or the product in question, and (d) there is no suggestion of sponsorship, affiliation, or endorsement between Plaintiff and Defendant;

3.     From engaging in any further tortious or otherwise unlawful acts, including the continued dissemination of false and misleading advertising using Plaintiff's trademarks, in violation of California Business & Professions Code §§ 17200 *et seq.*, and 17500 *et seq.*; and

4.     From in any way inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts;

E.     That Plaintiff be awarded monetary damages sufficient to compensate Plaintiff for injury arising out of Defendant's tortious acts and other violations of Plaintiff's rights, in an amount to be determined according to proofs, as authorized by 15 U.S.C. § 1117(a)(2), California Business & Professions Code §§ 17200 *et seq.*, and 17500 *et seq.*, and as otherwise authorized by law.

F.      That Defendant must account for and disgorge to Plaintiff all profits arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117(a)(2), California Business & Professions Code §§ 17200 *et seq.*, and 17500 *et seq.*, and California common law.

G.      That Plaintiff be awarded damages and other monetary relief in the amount of Defendant's profits and unjust enrichment arising out of Defendant's tortious acts and other violations of Plaintiff's rights, in an amount to be determined according to proofs, as authorized by 15 U.S.C. § 1117(a)(1), California Business & Professions Code §§ 17200 *et seq.*, and 17500 *et seq.*, California common law, and as otherwise authorized by law;

H.      That Plaintiff be awarded costs, expenses, and attorney fees incurred in obtaining relief from Defendant's tortious and unlawful acts and other violations of Plaintiff's rights, as authorized by 15 U.S.C. § 1117(a) & (b), California Business & Professions Code §§ 17200 *et seq.*, and 17500 *et seq.*, California common law, California Code of Civil Procedure § 1021.5, and as otherwise authorized by law;

I.      That Plaintiff be awarded treble damages arising out of Defendant's acts of trademark infringement and counterfeiting, as authorized by 15 U.S.C. § 1117(b);

J.      That Plaintiff be awarded statutory damages in the amount of not less than $1,000 or more than $200,000, or not more than $2,000,000 upon a finding of willfulness, per counterfeit mark, per type of goods or services sold, offered for sale, or distributed, as authorized by 15 U.S.C. § 1117(c);

K.      That Plaintiff be awarded exemplary damages in an amount authorized by California Civil Code § 3294(a) and as otherwise authorized by law;

L.      That Plaintiff be awarded pre and post-judgment interest on all amounts awarded; and

M.      For such other and further relief as the Court may deem just and proper.

1

## Jury Demand

2

Pursuant to Fed. R. Civ. P. 38 and Civil L.R. 3-6, Plaintiff demands a jury trial on all issues

3

triable by a jury.

4

5

6

DATED this 13th day of February, 2024.

7

_/s/ Michael Zachary_

Michael Zachary (SBN 112479)

8

mzachary@bdiplaw.com
Hillary Bunsow (SBN 278719)

9

Hillary.bunsow@bdiplaw.com
Gareth De Walt (SBN 261479)

10

gdewalt@bdiplaw.com
Brenda Entzminger (SBN 226760)

11

bentzminger@bdiplaw.com
BUNSOW DE MORY LLP

12

701 El Camino Real
Redwood City, CA 94063

13

Telephone: (650) 351-7248
Facsimile: (415) 426-4744

14

Michael Matesky (*Pro Hac Vice*)

15

mike@mateskylaw.com
Matesky Law PLLC

16

4500 9th Ave. NE, Suite 300
Seattle, WA 98105

17

Ph: 206.701.0331
Fax: 206.701.0332

18

*Attorneys for Plaintiff*

19

CALIFORNIA INDUSTRIAL
FACILITIES RESOURCES, INC., dba CAMSS

20

SHELTERS

21

22

23

24

25

26